FIRST METHODIST EPISCOPAL CHURCH OF WHITE
BEAR BEACH v. WHITE BEAR BEACH CHURCH.[1]

July 3, 1914.

Nos. 18,712—(127).

**Conveyance invalid — evidence.**

> The evidence sustains the findings that two deeds purported to be executed
> by plaintiff to defendant were executed without authority and were a fraud
> upon plaintiff and its members.

Action in the district court for Ramsey county to cancel a warranty deed and a quitclaim deed and the record of the same. The case was tried before Catlin, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Walter L. Chapin,* for appellant.

*William P. Westfall,* for respondent.

HOLT, J.

Ever since 1889 plaintiff has been a religious corporation in connection with the Methodist Episcopal denomination, organized under its auspices, and governed by its practice and laws. Up to November 9, 1912, it had been and was the admitted owner of two lots on the shores of White Bear lake upon which a small frame church was erected. Its membership had however dwindled down to a very few, perhaps not more than seven, and regular services led by ministers of the denomination or conducted under its rules had not been held for about two years. In this situation some of plaintiff's members and trustees conceived the plan of securing the property for a nonsectarian place of worship. And to that end, it may be surmised, the defendant corporation was formed. Claiming to be the president and secretary, respectively, of the plaintiff board of trustees, Albert M. Lawton and John N. Thayer conveyed the property for the "sum of five dollars and other valuable considerations" to the de-

[1] Reported in 148 N. W. 271.

fendant. Apprehending that the proper formality had not been complied with, a quitclaim deed was signed on November 23, 1912, by the same parties, pursuant to a resolution adopted at a pretended meeting of the plaintiff congregation called for the purpose of giving the trustees authority to sell. This meeting was held November 18, and after passing a resolution directing a sale, it was adjourned until November 25, at which time a resolution was adopted confirming the conveyances and pretending to authorize a lease by defendant to plaintiff of the property for the annual rent of one dollar. While this was going on a minister, assigned by the bishop under the practice of the Methodist Episcopal denomination, vainly attempted to obtain possession and hold service in the church. The dissension culminated in this lawsuit for the cancelation of the two deeds mentioned. Plaintiff prevailed and defendant appeals from the order denying it a new trial.

The appellant challenges certain of the findings of fact and the conclusions of law. No fault is found with the findings to the effect that plaintiff was organized and has continued to exist and act in accordance with the rules and usages of the church denomination known as the Methodist Episcopal Church; that it was the owner in fee of the church property involved on November 9, 1912; that its lawful trustees then were Albert M. Lawton, John N. Thayer, James Swedberg and Edward Gill; that for a considerable time prior to said date no religious services of the plaintiff organization had been held on said premises and the membership had greatly diminished; that on the date mentioned the said Albert M. Lawton and John N. Thayer, being at the same time trustees of the defendant corporation and president and secretary thereof, held at plaintiff's church building, what they styled a meeting of the board of trustees of the plaintiff corporation, no other trustee or person being present, elected themselves president and secretary of the board of trustees of the plaintiff, and adopted what purported to be a resolution, authorizing the officers of the trustees to sell the church property for the price of five dollars to the defendant; that the building exclusive of the lots was well worth $400; that on the same day after said purported meeting these men executed in the name of plaintiff a warranty deed

of the premises to defendant, and thereupon Lawton paid Thayer as secretary of plaintiff on behalf of defendant five dollars, and, as officers of plaintiff, they delivered to themselves, as officers of defendant, the deed and caused it to be recorded; and that on November 23, 1912, A. M. Lawton, James Swedberg, and John N. Thayer held a meeting as trustees of the plaintiff corporation and assumed to pass a resolution authorizing Lawton and Thayer as president and secretary of the board of trustees of plaintiff to execute to defendant a quitclaim deed to said property "for the purpose of removing doubt as to the validity of the former deed," and pursuant to the resolution the quitclaim deed was executed and recorded.

The findings to which exceptions are taken are to the effect that on and after November 11, 1912, plaintiff was united with two other congregations under one pastoral charge, and on that day the quarterly conference of the charge elected, according to the authorized practice of the church body with which the plaintiff congregation affiliated, the following named trustees of plaintiff, namely: Edward Gill, C. B. Wyatt, J. Sieloff, James Swedberg and Ephraim Erickson; that these trustees organized by electing Edward Gill chairman and C. B. Wyatt secretary and thereafter employed an attorney to bring this action; and that the deeds to defendant were not duly made or authorized by the plaintiff congregation as required by law, but that each of said deeds was fraudulently and wrongfully made, executed and acknowledged and was a fraud upon the plaintiff and its members.

That the warranty deed dated November 9, 1912, was properly set aside seems too plain for argument. Two men on the board of trustees for the defendant, and being president and secretary thereof, call a meeting of the plaintiff's board of trustees of which they are then members, at which meeting none but these two out of an existing board of four attend; elect themselves president and secretary of the plaintiff's board of trustees; pass a resolution to convey plaintiff's property worth more than $400 for five dollars; execute the deed as officers of plaintiff and deliver it to themselves as officers of the defendant, one of the men paying the five dollars consideration to the other. No semblance of conformity either to statute or to

the laws of the denomination to which plaintiff belongs is shown in this conveyance and the court was justified not only in setting it aside as made without authority, but also as a fraudulent attempt to deprive plaintiff of its property.

We are also of the opinion that the other findings assailed, as above indicated, are sustained by the evidence, particularly the one concerning the election of a new board of trustees on November 11, 1912. That being so Lawton and Thayer were no longer trustees of plaintiff at the time the quitclaim deed was executed and plaintiff's title was not conveyed thereby. It is to be noted that no ratification or estoppel is pleaded, and, of course, there is no finding upon any such proposition so that the action of the alleged meeting of the plaintiff congregation held on November 25, 1912, pursuant to a so-called adjournment of the meeting of November 18, is not here involved. The defendant stands upon the two conveyances being properly executed by plaintiff, under authority given by the congregation at a meeting claimed to have been duly called for the purpose of determining whether or not the property should be sold. (The allegation in the answer that this meeting was held by the defendant, and that two-thirds of its members voted in favor of the sale, is undoubtedly strictly true, but we assume it was the intention of the pleader to refer to the plaintiff instead of defendant and so treat the allegation.) Plaintiff contends that the meeting was not legal in that the notice of the meeting, read in the church upon four Sabbaths next preceding the holding thereof, was so read when the services were not conducted under the auspices of the Methodist Episcopal Church, but under those of a nonsectarian assembly, and that posting of the notice did not help matters since it was posted in one place only instead of in three, as required by subd. 14 of section 9412, G. S. 1913. We deem it unnecessary to consider these objections, for it seems the consideration is so utterly inadequate that it furnishes in itself a basis for setting aside the attempted transfers. Add to that the manner in which two members of plaintiff's board of trustees anticipated the appointment of other trustees inimical to their plan, by executing a deed in advance of the so-called congregational meeting which was to determine the question of sale,

and that the quitclaim deed was not executed by the then trustees of plaintiff and the conclusion is irresistible that the deeds were wrongfully made "and were a fraud upon the plaintiff and its members." It is apparent that the persons who pretended to constitute the plaintiff congregation, in attempting to sell the property to defendant, entirely ignored the rules and laws of the denomination with which plaintiff was connected. These rules and laws make clear that it is intended that the property of the individual congregation shall not be disposed of in such manner that the consideration is lost to the congregation or to the denominational body, the Annual Conference (Book of Discipline of the Methodist Episcopal Church, §§ 342–360). The persons through whom the appellant claims to have obtained the church property of the plaintiff did not conform to the letter or spirit of the laws of the Methodist Episcopal Church either in the attempts to deed or in the disposition of the nominal consideration for the deeds.

The judgment is affirmed.